IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>   vs.<br><br>JAHKEEL EDDIE JOSEPH,<br><br>                      Defendant. | Case No. 3:16-cr-00040-TMB-KFM<br><br>**FINAL REPORT AND RECOMMENDATION REGARDING MOTION TO DISMISS INDICTMENT FOR VINDICTIVE PROSECUTION**[1]<br>**[Docket No. 15]** |

## I. MOTION PRESENTED

Before the Court is Jahkeel Eddie Joseph's Motion to Dismiss the Indictment.[2] The government opposes.[3] No party asked for an evidentiary hearing or for argument and this Court concludes neither is required. Upon careful review of the motion, the response in opposition, and the applicable law, this Court recommends that the District Court, upon independent review, deny the Motion to Dismiss at Docket No. 15.

## II. BACKGROUND

**A. The Indictment**

Joseph is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[4] The indictment alleges that on February 2, 2016, Joseph

---

[1] This report and recommendation is being issued as a final report and recommendation. Pursuant to Fed. R. Crim. P. 59(b)(3), any objections will be considered by the District Court Judge, who will accept, reject, or modify the recommendation, or resubmit the matter to the Magistrate Judge for additional consideration and recommendations.
[2] Docket No. 15.
[3] Docket No. 16.
[4] Docket No. 2.

possessed a shotgun affecting interstate commerce after sustaining a felony conviction.[5] The indictment includes a forfeiture allegation that seeks to forfeit the shotgun if Joseph is convicted.[6]

**B.    Joseph's Motion and the Government's Response**

Joseph asks the Court to dismiss the indictment under the Fifth Amendment Due Process Clause.[7] Joseph contends dismissal is appropriate because this prosecution is a vindictively-motivated response to Joseph's refusal to provide federal investigators with his cell phone password in an unrelated case.[8]

The government opposes.[9] First, it asserts the circumstances of the case do not warrant a presumption of vindictiveness.[10] Second, it contends that the decision to prosecute Joseph for being a felon in possession of a firearm was not vindictive and no reliable, non-speculative, evidence suggests otherwise.[11]

**C.    The Facts[12]**

On September 14, 2015, an Alaska Superior Court entered a judgment of conviction against Joseph for third degree assault.[13] Third degree assault is a felony class offense because the potential penalty can exceed one year.[14]

In the early morning hours of February 2, 2016, Anchorage Police were dispatched to a disturbance that included the report of a possible gun shot.[15] Along the way, they encountered

---

[5] *Id.*
[6] *Id.*
[7] Docket No. 15.
[8] *Id.* at 11-12.
[9] Docket No. 16.
[10] *Id.* at 4.
[11] *Id.* at 4-5.
[12] Joseph accepted the facts set forth in discovery as provided by the government pursuant to Fed. R. Crim. P. 16 for purposes of resolving this motion to dismiss. Docket Nos. 15 at 1-2; 16-2.
[13] Docket No. 16-1.
[14] Alaska Stat. § 11.41.220(e); Alaska Stat. § 12.55.125(e).
[15] Docket No. 16-2 at 5.

a Chevrolet Impala driving erratically.[16] As the officers watched, the Impala swerved onto the wrong side of the road, ran a stop sign, and almost hit the curb.[17] Officers stopped the Impala and identified the driver as Joseph.[18] The officers suspected Joseph was intoxicated and arrested him after a series of failed field sobriety tests.[19] They seized a loaded shotgun located next to Joseph in the passenger seat.[20] Investigation established that Joseph had just left an apartment after discharging a shotgun through a wall into an adjacent apartment.[21] Based on these events, the State of Alaska charged Joseph with driving under the influence, refusal to submit to a chemical test of his breath, reckless discharge of the shotgun, and possession of the shotgun while intoxicated.[22] The state court remanded him to the Goose Creek Correctional Center.[23]

On April 5, 2016, FBI Special Agent Wendy Terry and FBI Task Force Officer Troy Clark digitally recorded an interview they conducted with Joseph at the correctional center.[24] At the outset of the interview, Joseph signed a written waiver of his *Miranda*[25] rights.[26] The questioning that followed focused on a December 23, 2015 robbery of an armored car outside a Wells Fargo Bank in Anchorage and a cellphone seized from Joseph's jail property pursuant to a search warrant.[27] During the course of the interview, the agents tried to persuade Joseph to give

---

[16] *Id.* at 2, 4-5.
[17] *Id.*
[18] *Id.* at 2, 5.
[19] *Id.* at 1, 3-6.
[20] *Id.* at 3-4, 6.
[21] Docket No. 15 at 2.
[22] *Id.* But *see* Docket No. 16 at 2 (the government suggests that the Alaska charges included a felon in possession count; this does not appear to be correct). Fed. R. Evid. 201. *See State of Alaska v. Jahkeel Eddie Joseph,* Case No. 3AN-16-995 CR; *see also* CourtView Justice Solutions, http://www.courtrecords.alaska.gov/eservices/home.page.11.
[23] Docket No. 15 at 3.
[24] Docket No. 24 (CD recording of the April 5, 2016 interview).
[25] *Miranda v. Arizona,* 384 U.S. 436 (1966).
[26] Docket Nos. 15 at 3; 16 at 3.
[27] Docket Nos. 15 at 3-4; 16 at 3 n.3.

them the cell phone passcode.[28] They argued providing the passcode would demonstrate his willingness to cooperate, could shorten their investigation, and ultimately could speed up the return of the phone.[29] Joseph refused.[30]

Two weeks later, on April 19, 2016, the grand jury returned the allegedly vindictive indictment.[31]

### III. ISSUE PRESENTED

Has Joseph demonstrated that the circumstances surrounding the government's pretrial charging decision in this case warrant application of a presumption of vindictiveness?

### IV. ANALYSIS

The answer is no. "A prosecutor violates due process when he [or she] seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right."[32] A defendant may establish vindictive prosecution by: (1) producing direct evidence of the prosecutor's punitive motive;[33] or (2) by showing a reasonable likelihood of vindictiveness, thus giving rise to a presumption of vindictiveness that the government may, if it can, rebut.[34] "[T]he appearance of vindictiveness results only where, as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because he has exercised his specific legal rights."[35] Thus,

---

[28] Docket No. 15 at 4-7.
[29] *Id.*
[30] *Id.* at 7.
[31] Docket No. 2 at 3.
[32] *United States v. Kent,* 649 F.3d 906, 912 (9th Cir. 2011) (quoting *United States v. Gamez-Orduno*, 235 F.3d 453, 462 (9th Cir. 2000)).
[33] *United States v. Jenkins,* 504 F.3d 694, 699 (9th Cir. 2007).
[34] *Kent,* 649 F.3d at 912-13 (citing *United States v. Goodwin,* 457 U.S. 368, 373 (1982)).
[35] *Jenkins*, 504 F.3d at 700 (quoting *Goodwin*, 457 U.S. at 373).

the presumption of vindictiveness will be imposed only if, under all the circumstances of the case, there is a realistic or reasonable likelihood the prosecutor's conduct was vindictively motivated.

This Court respectfully concludes that the motion to dismiss must be denied because: (1) there is no realistic likelihood that the government's pretrial charging decision in this case would not have occurred but for animus toward Joseph; and (2) Joseph has failed to offer any evidence that the government's pretrial charging decision actually was vindictive.

A. **The Facts and Circumstances Surrounding this Pretrial Charging Decision do not Warrant a Presumption of Vindictiveness**

Courts generally presume public officials properly discharge their official duties; consequently, the standard of proof to show a prosecutor made a charging decision in violation of the United States Constitution is very demanding.[36] Just as importantly, courts generally refuse to apply a presumption of vindictiveness to a prosecutor's pretrial charging decisions. *United States v. Kent* summarizes why.

> For good reasons, the Supreme Court has urged deference to pretrial charging decisions. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the [prosecution] has a broader significance. At the pretrial stage, the prosecutor's assessment of the proper extent of prosecution may not have crystalized. Also, in the plea negotiation context, the prosecutor's latitude to threaten harsher charges to secure a plea agreement advances the interest in avoiding trial shared by the prosecutor, defendant, and public. Finally, prompting prosecutors to file the harshest possible charges at the outset would cause prejudice to defendants, for an accused would bargain against a greater charge, face the likelihood of increased bail, and run the risk that the court would be less inclined to accept a bargained plea. Allowing prosecutors the leeway at first to withhold more severe charges also spares defendants damage to their reputation that could result from the piling on of charges. For

---

[36] *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 441 (9th Cir. 2007) (citing *United States v. Armstrong*, 517 U.S. 456, 463 (1996)).

these reasons, the prosecutor's initial charging decision should not freeze his or her future conduct.[37]

The following facts are relevant to resolving this motion. Joseph is alleged to be a convicted felon.[38] That felony, assault in the third degree, was a serious offense.[39] It required proof that Joseph inflicted serious physical injury on another person by means of a dangerous instrument.[40] Officers encountered Joseph on February 2, 2016, less than six months after he sustained the alleged predicate assault felony.[41] Joseph had been driving erratically and appeared intoxicated.[42] Officers found a shotgun in the car in plain view.[43] Joseph failed field sobriety tests and subsequently was arrested for driving under the influence and for weapons related misdemeanor offenses.[44] Investigation established that he had just left an apartment after discharging a shotgun through a wall into an adjoining apartment.[45]

It is true that investigators interviewed Joseph at the Goose Creek Correctional Center on April 5, 2016, regarding an armored car robbery and that they asked Joseph to provide them with his cellphone password.[46] It also is true that they actively encouraged him to provide the passcode because doing so would demonstrate he was cooperating, help their investigation, and speed the ultimate return of the phone to Joseph.[47] However, they also assured Joseph that the

---

[37] *Kent,* 649 F.3d at 913 (original quotation marks, brackets, and citations omitted).
[38] Docket No. 2.
[39] Alaska Stat. § 11.41.220(a)(4).
[40] *Id.*; *see also* Docket No. 2 at 2.
[41] Docket No. 16 at 2. *See State of Alaska v. Jahkeel E. Joseph*, 3AN-14-05432 CR (disposition date September 14, 2016); *see also* CourtView Justice Solutions, *http://www.courtrecords.alaska.gov/eservices/home.page.11*.
[42] Docket Nos. 16 at 2; 16-2.
[43] Docket Nos. 16 at 2; 16-2.
[44] Docket Nos. 16 at 2; 16-2.
[45] Docket No. 15 at 2.
[46] Docket Nos. 15 at 4-8; 16 at 2-3.
[47] Docket Nos. 15 at 4-8; 16 at 2-3.

decision to disclose the cellphone password would have to be his voluntary choice.[48] And Joseph steadfastly refused.[49]

But there is nothing other than happenstance to link these two investigations, one involving an armored car robbery in December 2015 and another being a felon in possession of a firearm in February 2016. Nevertheless, Joseph contends that *United States v. Jenkins*[50] requires, on these facts, a presumption of vindictiveness. But his argument is not persuasive, as *Jenkins* is readily distinguishable. *Jenkins* involved a defendant stopped on two separate occasions at a port of entry in vehicles containing undocumented aliens. Each time the defendant acknowledged, after a *Miranda* advisement, that she had been paid to drive across the border knowing there were undocumented aliens in the car. Despite two border crossings and separate admissions, the government did not pursue an alien smuggling prosecution. Three months later the defendant again was intercepted at a point of entry in a vehicle, this time with marijuana. She maintained at the time that she had been paid to drive the vehicle across the border believing it contained undocumented aliens. A marijuana importation indictment followed and Jenkins testified at trial that she had been paid to drive across the border believing the vehicle contained undocumented aliens and not marijuana. Immediately following her testimony, but before the jury returned its verdict, the government charged Jenkins with the two earlier alien smuggling events.

The district court determined that under these circumstances there was a reasonable or realistic likelihood that the alien smuggling charge was a vindictive response to her exercise of her right to testify, and ultimately dismissed the indictment when the government failed to rebut the presumption. The appellate court affirmed.

---

[48] Docket Nos. 15 at 6; 16 at 3.
[49] Docket Nos. 15 at 7; 16 at 3.
[50] 504 F.3d 694 (9th Cir. 2007).

> The case before us presents an unusual situation because the government's alien smuggling case essentially was open and shut even before Jenkins testified in court. The government's evidence prior to Jenkins's in-court confession included: (1) her October 19 admission that she had been paid by a man named Pablo to smuggle aliens, (2) her October 20 admission that Pablo had paid her $100 to drive a car across the border and that she was aware of the illegality of alien smuggling, and (3) her January 9 admission that she had smuggled aliens on October 19 and 20 and had been apprehended. Indeed, the government admitted that prior to Jenkins's testimony it "had enough to go forward, unquestionably," and that it "could have brought charges earlier on." In these circumstances, the government's decision to press charges only after Jenkins asserted a reasonably credible defense to the marijuana importation charges raises, at the very least, a "reasonable or realistic likelihood" that the government's decision was motivated by a retaliatory purpose. We therefore conclude that the government's conduct created the appearance of vindictiveness.[51]

Not so here. Indeed, nothing other than the sequence of events suggests even the possibility of vindictiveness. First, the armed robbery case investigation and the felon in possession of a firearm case investigation were entirely unrelated. Second, the government has at its disposal lawful means to access the contents of this cellphone in the face of Joseph's refusal. Finally, the facts associated with Joseph's arrest, together with Joseph's alleged predicate felony, suggest that the decision to prosecute had nothing whatsoever to do with the cellphone passcode. Stated another way, there is no support for the contention that this felon in possession of a firearm case would not have been prosecuted but for Joseph's refusal to provide the investigators with his cellphone passcode.[52]

---

[51] *Jenkins,* 504 F.3d at 700.

[52] *Cf. United States v. Lopez,* 474 F.3d 1208, 1212 (9th Cir. 2007) ("[T]he FBI's threat of 'serious federal time' falls short of evidence of vindictiveness. A prosecutor, and presumably field officers too, may threaten a defendant with prosecution during an interview or plea negotiations, and if that defendant chooses not to cooperate or plead guilty, the prosecutor is free to initiate prosecution"), *overruled on other grounds by United States v. King,* 687 F.3d 1189 (9th Cir. 2012) (per curium).

Under these circumstances this Court is unwilling to find a reasonable or realistic likelihood that the decision to prosecute Joseph for being a felon in possession of a firearm was in any way related to or motivated by Joseph's refusal to voluntarily provide his cellphone passcode. Accordingly, a presumption of vindictiveness cannot apply to the government's pretrial decision to have the grand jury review a proposed felon in possession of a firearm indictment against Joseph.

**B.     There is no Evidence of Actual Vindictiveness**

Joseph does not contend the decision to present this case to the grand jury was motivated by actual vindictiveness. Without direct evidence of actual vindictiveness, Joseph's motion to dismiss the indictment must fail.[53]

### V.     CONCLUSION

Based on the foregoing analysis, **this Court respectfully recommends that the District Court, upon independent review, deny the motion to dismiss at Docket No. 15.**

DATED this 21st day of June, 2016, at Anchorage, Alaska.

/s/ Kevin F. McCoy
Kevin F. McCoy
United States Magistrate Judge

Pursuant to Fed. R. Crim. P. 59(b)(2) and D. Alaska Loc. Mag. R. 6(a), a party seeking to object to this final finding and recommendation shall file written objections with the Clerk of Court no later than the **CLOSE OF BUSINESS** on **July 5, 2016**. Pursuant to Fed. R. Crim. P. 59(b)(3), objections will be considered first by the District Court Judge, who will then accept, reject, or modify the recommendation, or resubmit the matter to the Magistrate Judge for additional consideration. Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. *Miranda v. Anchondo, et al.*, 684 F.3d 844 (9th Cir. 2012). The Ninth Circuit concludes that a district court

---

[53] *See Jenkins,* 504 F.3d at 699 (citing *United States v. Gallegos-Curiel,* 681 F.2d 1164, 1168 (9th Cir. 1982) (defendant must provide direct evidence of punitive motive when facts and circumstances do not justify a presumption of vindictiveness)).

is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation. *United States v. Howell*, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before the **CLOSE OF BUSINESS** on **July 12, 2016**. The parties shall otherwise comply with provisions of D. Alaska Loc. Mag. R. 6(a). **The shortened objection and response deadlines are necessary due to the looming trial date. D. Alaska Loc. Mag. R. 6(a) authorizes the Court to alter the standard objection deadlines.**

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).